**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ZHOU FENG, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. EA-26-993** |
| **UNITED STATES DEPARTMENT OF STATE,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On March 9, 2026, Plaintiffs Zhou Feng and Yangling Zhou initiated the above-captioned action against the United States Department of State (State Department) in which they seek relief with respect to their non-immigrant visa applications under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et. seq*., the Mandamus Act, 28 U.S.C. § 1361, and the Due Process Clause of the Fifth Amendment to the United States Constitution.[1] ECF No. 1. Pending before the Court is the State Department's motion to dismiss or, in the alternative, for summary judgment. ECF No. 13. The motion is fully briefed and no hearing is necessary. ECF Nos. 13, 16, 19; Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion, construed as a motion to dismiss, is granted.

## I. BACKGROUND[2]

Mr. Feng and Ms. Zhou are citizens of the People's Republic of China. ECF No. 1 ¶ 4. On April 8, 2024, Mr. Feng's employer "filed an I-129 Petition" for an H1-B nonimmigrant

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent and. ECF Nos. 3–4, 6, 10; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2] The factual allegations in this section are drawn from the relevant allegations in the Complaint (ECF No. 1), which are accepted as true for the purpose of deciding this motion. *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164-165 (4th Cir. 2016).

temporary worker visa on Mr. Feng's behalf, which was approved on June 7, 2024.[3] *Id.* at ¶ 2; *see also* 8 U.S.C. § 1101(a)(15)(H). Ms. Zhou, as the spouse of a nonimmigrant temporary worker, submitted a petition for an H-4 visa, which was approved on December 4, 2024. ECF No. 1 ¶ 3; *see also* 8 U.S.C. § 1101(a)(15)(H). On September 8, 2025, the State Department interviewed Mr. Feng and Ms. Zhou in connection with their visa applications. ECF No. 1 ¶ 6. At the conclusion of those interviews, Mr. Feng and Ms. Zhou "received a 221(g) Form and were requested [to provide] additional information."[4] *Id.* Two days later, on September 10, 2025, Mr. Feng and Ms. Zhou submitted the requested supplemental information. *Id*. at ¶ 7. The State Department has not approved their visa applications. *Id*. at ¶ 8.

The Complaint pleads two counts. *Id.* at ¶¶ 17–37. Mr. Feng and Ms. Zhou seek relief pursuant to Section 706(1) of the APA and the Fifth Amendment's Due Process Clause. *Id.* at ¶¶ 18–19, 25, 33; 5 U.S.C. § 706(1); U.S. Const. amend. V. Plaintiffs ask that the Court issue a writ of mandamus that compels the State Department to "promptly complete all administrative processing within sixty days," "issue the visa stamps," and "explain to Plaintiffs the cause and nature of the delay and inform Plaintiffs of any action they may take to accelerate processing of the visa applications." *Id.* at 8; 28 U.S.C. § 1361. Plaintiffs further ask that the Court "adjudicate the visa stamps pursuant to . . . declaratory judgment authority" and award attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *Id.*

---

[3] "H-1B Visas are available for companies who need employees to fill specialty occupations and authorize the employees to live and work in the United States on a temporary basis." *Sakthivel* v. *Jaddou*, No. 21-1207, 2023 WL 2888565, at *1 (4th Cir. Apr. 11, 2023) (citing 8 U.S.C. § 1101(a)(15)(H)(i)(b)). Approval of the I-129 Petition was a separate and distinct act from the adjudication of Plaintiff Zhou Feng's H1-B visa application itself, which is at issue here. U.S. Dep't of State, *Temporary Worker Visas*, https://perma.cc/8RGM-VABE (last visited Oct. 27, 2026).

[4] The undersigned understands the "Form" Plaintiffs received on September 8, 2025, to be a notice of visa refusal under Section 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201(g).

## II. DISCUSSION

The State Department argues that the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' APA claim and, alternatively, that both counts of the Complaint fail to state a claim upon which relief may be granted. ECF No. 13-1 at 5–12. Mr. Feng and Ms. Zhou argue the opposite. ECF No. 16 at 10–21. Each challenge is addressed in turn below.

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute . . . , which is not to be expanded by judicial decree." *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted); *see also Strawn* v. *AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) ("We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations."). Therefore, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Home Buyers Warranty Corp.* v. *Hanna*, 750 F.3d 427, 432 (4th Cir. 2014); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject[ ]matter jurisdiction, the court must dismiss the action."). The limited jurisdiction of federal courts places the burden on the party asserting a claim to allege—and, when challenged, establish—the Court's subject matter jurisdiction over the pending claim. *Home Buyers Warranty Corp.*, 750 F.3d at 432.

Mr. Feng and Ms. Zhou point to the APA and the Mandamus Act as supplying the basis for this Court's jurisdiction to adjudicate their first claim for relief. ECF Nos. 1 ¶ 14; 16 at 10. APA Section 706(1) permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But "a claim under § 706(1) can proceed only where

a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton* v. *South Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). Likewise, the Mandamus Act permits federal courts to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "A court can grant mandamus relief only if the plaintiff establishes '(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists.'" *Aghamohammadi* v. *Rubio*, Civil Action No. DKC-24-2801, 2025 WL 2687343, at *10 (D. Md. Sept. 19, 2025) (quoting *American Hosp. Ass'n*. v. *Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). The requirement to take action under either statute is known as a nondiscretionary duty. *Turner* v. *Blinken*, Civil Action No. RDB-24-318, 2024 WL 4957178, at *3–4 (D. Md. Dec. 3, 2024). When "an agency is *not required* to do something, we cannot compel the agency to act—let alone to act faster." *Gonzalez* v. *Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (emphasis in original) (discussing Section 706 of the APA); *see also Lovo* v. *Miller*, 107 F.4th 199, 216 (4th Cir. 2024) ("Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act.").

The State Department contends that Plaintiffs have not alleged a failure to undertake a nondiscretionary duty and that, in any event, it satisfied any nondiscretionary duty when it denied their visa applications. ECF No. 13-1 at 5–7. The undersigned concurs. The Immigration and Nationality Act (INA) "requires that 'all nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer.'" *Arshadi* v. *Platek*, No. 1:24-CV-1632 (RDA/IDD), 2025 WL 1570967, at *3 (E.D. Va. June 3, 2025) (emphasis in original) (quoting 8 U.S.C. § 1202(d)). Federal regulations provide that "[w]hen a visa application has been properly completed and executed . . . , the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). "This mandatory language establishes

a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas." *Arshadi*, 2025 WL 1570967, at *3. If the official refuses the visa, they must inform the applicant of the reasons why and "whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." 22 C.F.R. § 41.121(b); *see also* 8 U.S.C. § 1201(g) (Nonissuance of visas or other documents). After a visa refusal, "State Department guidance allows consular officers to, in their discretion . . . accept additional evidence from the applicant" and "place the application in a period of administrative processing." *Sakhi* v. *Blinken*, Civil Action No. DLB-24-1376, 2025 WL 904141, at *5 (D. Md. March 25, 2025). The term "administrative processing" has no formal definition in law or policy and "evidently refers to consideration of additional submitted evidence and review of any security concerns the application prompted." *Aghamohammadi*, 2025 WL 2687343, at *2.

Here, Mr. Feng and Ms. Zhou have not alleged a failure to undertake a nondiscretionary act. To the contrary, all parties agree that Plaintiffs' visa applications were refused under INA Section 221(g), 8 U.S.C. § 1201(g), and are in a status where a consular official retains an ability to further reconsider the applications by receiving additional information, awaiting the results of administrative processing, or both. ECF Nos. 1 ¶ 6; 13-1 at 3–4. Plaintiffs assert that the refusal is incomplete because their visa applications are in administrative processing and there is a nondiscretionary duty to "finalize" their adjudication. This argument is unavailing. First, the State Department adjudicated the visa applications when it refused them. *Raihanoune* v. *United States Citizenship & Immigr. Servs.*, No. 1:24-CV-219 (PTG/IDD), 2025 WL 510235, at *5 (E.D. Va. Feb. 13, 2025) ("[A]n initial refusal satisfies the government's obligations with respect to the application.") (collecting cases); *Turner* v. *Blinken*, Civil Action No. RDB-24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) ("[M]any courts in the Fourth Circuit have held that refusal of a visa under § 221(g) fulfills immigration officials' discrete, non-discretionary duty

regarding visa applications.") (collecting cases). Even if a consular official exercises "his discretion to allow [Plaintiff] to submit additional evidence, the officer ha[s] no obligation to accept the additional information, and the officer does not have a nondiscretionary duty to issue another decision." *Sakhi*, 2025 WL 904141, at *5. While there is case law holding that a Section 221(g) refusal does not satisfy the nondiscretionary duty, "the weight of the case law in the Fourth Circuit" concludes that Section 221(g) refusals satisfy a consular officer's duty without any corresponding nondiscretionary duty of reconsideration. *Aghamohammadi*, 2025 WL 2687343, at *6 (collecting cases). Second, the "general, good-governance principles" set forth in Section 555(b) of the APA that require agencies to promptly resolve matters does not create a duty to act in any particular instance, absent other specific statutory commands. *Karimova* v. *Abate*, No. 23-5178, 2024 WL 3517852, at *3-4 (D.C. Cir. July 24, 2024); *see also Ramizi* v. *Blinken*, 745 F. Supp. 3d 244, 262 (E.D.N.C. 2024) ("Section 555(b) does not identify a discrete agency action; by its plain terms, it applies to every agency action."). Plaintiffs' APA claim must therefore be dismissed for lack of subject matter jurisdiction.[5]

**B. Failure to State a Claim**

Even if the Court were to have subject matter jurisdiction, the Complaint fails to state a claim upon which relief may be granted for either cause of action.

1. <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." It

[5] The doctrine of consular non-reviewability also precludes relief. "It is well settled that the power to decide who is allowed into the United States belongs almost exclusively to either Congress or the Executive." *Gogo* v. *Blinken*, Civil Action No. GLR-23-02776, 2024 WL 3276168, at *2 (D. Md. July 1, 2024) (citing *Trump* v. *Hawaii*, 585 U.S. 667, 702 (2018)). The undersigned therefore must dismiss any claim for relief that asks that the Court substantively adjudicate or compel a favorable adjudication of Plaintiffs' visa applications.

is fundamental that the "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy sought. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The same does not hold true for legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal conclusions from the factual allegations. *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard falls somewhere in between "probability," which is not required, and "sheer possibility," which is insufficient. *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The determination of whether a complaint states a plausible claim for relief

is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

2. Unreasonable Delay

"The Supreme Court has not, so far, provided clear guidance on how to determine how long is too long to wait for an agency adjudication." *Gonzalez*, 985 F.3d at 375. When a plaintiff asserts a claim of unreasonable delay in agency adjudication, most lower courts apply the factors set forth in *Telecommunications Research & Action Ctr.* v. *FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984). *Id*. The six *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80 (internal quotations and citations omitted). Analysis of the *TRAC* factors reveals that Mr. Feng and Ms. Zhou have not plausibly alleged their unreasonable delay claim.

While it is true that "a claim of unreasonable delay is necessarily fact dependent and thus . . . should not typically be resolved at [the motion to dismiss stage]," *Gonzalez*, 985 F.3d at 375, a plaintiff must nevertheless meet the plausibility pleading standard, *Joshua* v. *Jaddou*, Civil Action No. JRR-24-667, 2025 WL 449001, at *7 (D. Md. Feb. 10, 2025). Accordingly, courts "routinely consider whether a plaintiff states a claim of unreasonable delay under the APA on a motion to dismiss." *Arefi* v. *Rubio*, Civil Action No. JRR-24-2031, 2026 WL 706593, at *7 (D. Md. March 13, 2026) (collecting cases). Here, Plaintiffs' pleading falls short of articulating a plausible claim of unreasonable delay.

"Courts generally consider the first and second *TRAC* factors together," focusing on "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Jahangiri* v. *Blinken*, Civil Action No. DKC-23-2722, 2024 WL 1656269, at *8 (D. Md. April 17, 2024) (internal quotations and citations omitted). While Plaintiffs assert that "a delay of over ten months to issue a final decision on the straightforward nonimmigrant visa applications to return to the United States is in and of itself unreasonable," they cite no statutory or regulatory timeframe against which to assess that time period. ECF No. 16 at 18. "In the absence of a congressionally supplied timeframe, courts typically look to case law for guidance." *Jahangiri*, 2024 WL 1656269, at *9 (internal quotations and citations omitted). "Courts have routinely found that delays of months longer than Plaintiffs have waited here [26 months]—even upwards of years longer—are not unreasonable." *Dieter Canaza* v. *Platek*, Civil Action No. BAH-25-303, 2026 WL 811234, at *15 (D. Md. March 24, 2026) (collecting cases). The approximately 13-month delay in this matter is therefore not unreasonable under *TRAC*'s first two factors under this comparative approach.[6]

"The third and fifth *TRAC* factors concern whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay," which "often run together." *Jahangiri*, 2024 WL 1656269, at *11 (internal quotations and citations omitted). Here, Plaintiffs assert that financial hardship, including Mr. Zheng's inability to continue his work in the United States and Plaintiffs' need to pay for temporary housing in China while maintaining their residence in Maryland during the pendency of their visa applications. ECF No. 16 at 19.

---

[6] The Court measures the delay "from the last Government action to the issuance of the opinion." *Dieter Canaza* v. *Platek*, Civil Action No. BAH-25-303, 2026 WL 811234, at *15 n.23 (D. Md. March 24, 2026) (internal quotations and citation omitted). Here, the last government action was the refusal notice issued on September 8, 2025. ECF No. 1 ¶ 6.

Plaintiffs also note that their United States citizen children face difficulties related to "education and separation from community ties in the United States." *Id*. The undersigned is sympathetic to these challenges and understands that they have created "an emotional and psychological burden" as well as a "period of extended uncertainty." ECF No. 1 ¶ 37. Nevertheless, "courts have recognized that uncertainty and the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Kasumu* v. *U.S. Citizenship & Immigr. Servs.*, Civil Action No. BAH-25-3511, 2026 WL 2806711, at *6 (D. Md. Sept. 18, 2026) (internal quotations and citations omitted). Additionally, Plaintiffs do not allege that continued visa processing has resulted in their separation from immediate or close family members. *Cf. Begum* v. *United States*, Civil Action No. JMC-22-00478, 2022 WL 16575703, at *9 (D. Md. Oct. 31 2022) (factors three and five weigh in favor of plaintiff where delay in visa application processing had resulted in separation from family); *Ishaq* v. *Schofer*, Civil Action No. TJS-24-00207, 2024 WL 3729107, at *7 (D. Md. Aug. 8, 2024) (same); *Jahangiri*, 2024 WL 1656269, at *11 (same). As a result, while these factors may weigh slightly in favor of Mr. Feng and Ms. Zhou, the Court does not find them dispositive.

"The fourth *TRAC* factor directs the court to consider the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.*at *11 (internal quotations and citations omitted). Because "granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants – many of whom undoubtedly face hardships of their own," courts often find this factor to categorically weigh in favor of the government. *Id.* at *12 (internal quotations and citations omitted) (collecting cases). This factor therefore weighs against a finding of unreasonable delay.

Mr. Feng and Ms. Zhou "do not allege that Defendant['s] delay was caused by bad faith *per se* under *TRAC* factor six." ECF No. 16 at 20. Recognizing that *TRAC* does not require such

a showing, the sixth factor lies in equipoise. On balance, the undersigned concludes that Plaintiffs have not plausibly alleged a claim of unreasonable delay. *Dieter Canaza*, 2026 WL 811234, at *16.

3. Due Process Claim

Finally, Mr. Feng and Ms. Zhou have not plausibly alleged a due process claim. Plaintiffs' contention that they have been deprived of the "right to fundamental fairness in administrative adjudication" (ECF Nos. 1 ¶ 33; 16 at 20–21) fails because "a noncitizen[ ] has no constitutional right to enter the United States." *Dep't of State* v. *Munoz*, 602 U.S. 899, 902 (2024); *see also Niroomand* v. *U.S. Dep't of Homeland Sec.*, Civil Action No. JRR-24-2103, 2025 WL 1837266, at *8 (D. Md. July 3, 2025) ("[N]oncitizens [do not] have a constitutionally-protected interest in the procedures by which… visas are obtained.") (alteration in original) (internal citation and quotation marks omitted). The out-of-circuit cases upon which Plaintiffs rely are inapposite, both because they involve issues not present here and because they do not represent the current state of the law. ECF No. 16 at 20 (citing *Ching* v. *Mayorkas*, 725 F.3d 1149, 1149 (9th Cir. 2013); *Cruz* v. *Sullivan*, 802 F. Supp. 1015, 1017 (S.D.N.Y. 1992)); *Munoz*, 602 U.S. at 909 (holding that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country").

## III. CONCLUSION

For the foregoing reasons, the State Department's motion to dismiss Plaintiffs' Complaint is granted. A separate Order follows.

Date: October 27, 2026

/s/
Erin Aslan
United States Magistrate Judge